**GUST ROSENFELD P.L.C.**
One East Washington Street, Suite 1600
Phoenix, Arizona 85004-2553
Telephone: 602-257-7422
Robert D. Haws – 012743
rhaws@gustlaw.com
John A. Butzer – 038113
jbutzer@gustlaw.com
**Attorneys for Defendants**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Camdyn Chavez, an individual; Paige Chavez, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>Kyrene School District No. 28, a political subdivision of the State of Arizona; Jeanette Vesely, individually and in her official capacity as Superintendent of Kyrene School District No. 28; James Martin, individually and in his official capacity as the former principal of Kyrene Altadena Middle School and as an employee of Kyrene School District No. 28; Does I-X and ABC Corporations I-X,<br><br>Defendants. | Case No. 24-CV-02467 PHX-NJK<br><br>**RESPONSE TO PLAINTIFFS' MOTION TO EXTEND DEADLINES** |

Pursuant to the Court's recent Order (Doc. 31), Defendants hereby respond to Plaintiffs' Motion to Extend Deadlines. The Motion is an improper attempt to revive and extend Plaintiffs' expired deadline to complete their expert disclosures. It should be denied.

This situation arose because Plaintiff's counsel concedes they did not review the case management order despite being counsel of record for six months. This lack of basic diligence fails to demonstrate the requisite good cause they concede is required. Additionally, Plaintiffs' neglect of this threshold responsibility is not excusable neglect.

## I.   LEGAL STANDARD

This Court retains broad discretion to enforce the scheduling order.  *Williams v. James River Grp. Inc.*, 627 F. Supp. 3d 1172, 1177 (D. Nev. 2022).  A scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  To reopen and extend case management deadlines, the moving party must show *both* (1) good cause and (2) excusable neglect.  Fed. R. Civ. P. 16(b)(4); *Branch Banking & Trust Co. v. DMSI, LLC,* 871 F.3d 751, 764–65 (9th Cir. 2017).

The good cause inquiry focuses on the moving party's reasons for seeking to modify the scheduling order and primarily considers the moving party's diligence.  *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013).  The moving party carries the burden of establishing diligence.  *Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d 1062, 1077 (D. Nev. 2019).

"The diligence obligation is ongoing" such that parties must "diligently attempt to adhere to [the deadlines in the scheduling order] throughout the subsequent course of the litigation."  *Morgal v. Maricopa Cnty. Bd. of Supervisors*, 284 F.R.D. 452, 460 (D. Ariz. 2012).  "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  If the moving party "was not diligent, the inquiry should end."  *Id.*

If a showing of good cause is made, the Court would next look to whether there was "excusable neglect."  This is guided by four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the moving party acted in good faith.  *Branch Banking*, 871 F.3d at 765; *see also Adherence v. CVS Health Corp.*, Case No. 2:24-cv-01590-JCM-NJK, 2025 WL 1393970, at *1 (D. Nev. Apr. 7, 2025).

Plaintiffs' Motion fails to meet either requirement.

## II.   ANALYSIS

1    **A.    Plaintiffs' Lack of Diligence Fails to Demonstrate Good Cause**

2    The Case Management Order indicates that "absent truly extraordinary 3 circumstances, parties will not be permitted to supplement their expert reports after these 4 deadlines." *See* Case Management Order, Doc. 14 at p. 3. Plaintiffs' motion fails to 5 address this language. Their motion seeks not only additional time to supplement a past-6 due expert report, but time to start from the beginning – they want time to locate experts 7 and create the original reports themselves. The motion is silent on how many experts 8 they now wish to retain or the supposed fields of expertise. This type of "blank check" 9 request is particularly unwarranted and prejudicial. Failure to review (or calendar) the 10 case management order despite six months to do so is not an extraordinary circumstance 11 or diligence that establishes good cause for the requested relief.

12    Plaintiffs, by their own admission, did not act diligently. Plaintiffs' counsel first 13 appeared in this case on December 26, 2024. (Doc. 30 at 2). At that time, the case 14 management order had been entered and active for over two months. (Doc. 14). Plaintiffs 15 admit that they neglected to review or even obtain a copy of the case management order. 16 (Doc. 30 at 2). They further admit that they were "unaware" of the case management 17 order for six months after appearing. (*Id.*)

18    Failing to review a copy of the case management order in a case after appearing is 19 not diligent – let alone not doing so for six months. At best, it is careless. This 20 "carelessness is not compatible with a finding of diligence and offers no reason for a grant 21 of relief." *Johnson*, 975 F.2d at 609.

22    Further, Plaintiffs did not "diligently attempt to adhere" to the deadlines in the case 23 management order. *See Morgal*, 284 F.R.D. at 460. Plaintiffs' counsel filed a formal 24 substitution of counsel and had full access to the docket. (*See* Doc. 20). Plaintiffs have 25 a duty to review the docket when taking over a case. The failure to undertake this task 26 when taking over a case underscores the lack of diligence. *See also Gray v. Imperial Pac.*

6592362                                -3-

*Int'l (CNMI), LLC*, Case No. 1:19-cv-00008, 2023 WL 5278128, at *3 (N. Mar. I. Aug. 23, 2023) (holding that new counsel "had an obligation to review the case to ascertain the current state of affairs" which would have included "a cursory skim of the docket sheet").

Plaintiffs seem to suggest their motion should be granted because they agreed to defense counsel having additional time to respond to their discovery requests. The two situations are not comparable and one does not justify the other. Counsel for Defendants and Plaintiffs have extended professional courtesies to one another. Defendants requested (in advance) additional time to respond to Plaintiffs' expansive discovery requests which seek ten years of student complaint records (Kyrene operates approximately 25 schools and has a total student enrollment of approximately 13,000), all documents relating to any alleged civil rights violations for the past 10 years and more. *See* Plaintiffs' First Set of Requests for Production to Defendants, Exhibit 1. The additional time defense counsel requested was needed to verify the existence of, gather, review, and provide records from the school district's off-site warehouse while many District staff are on summer break.

Plaintiffs also fail to mention that Defendants extended two similar extensions to them with regard to Defendants' first set of discovery requests or that Defendants have patiently worked with Plaintiffs' counsel to obtain complete copies of Plaintiffs' medical records and Camdyn's educational records after she left the Kyrene Elementary School District. Moreover, these common professional courtesies between counsel are very different from the relief Plaintiffs now request. The expert disclosure deadline is much more than a standard discovery extension request which the Case Management Order allows the parties to address between themselves so long as "the discovery deadlines set forth in this Order" are not altered or extended. *See* Case Management Order, Doc. 14 at p. 2, n. 4. Instead, Plaintiffs' Motion pertains to a deadline scheduled *nine months* in advance and six months after Plaintiffs switched attorneys.

1   Plaintiffs mistakenly suggest they have shown diligence because they filed their
2   Motion shortly after the deadline passed. Diligence requires appropriate actions <u>prior</u> to
3   the deadline. It is not enough to quickly shut the barn door after the horse has escaped.
4   Because Plaintiffs were not diligent, the "inquiry should end." *Johnson*, 975 F.2d
5   at 609. Diligence is the cornerstone of good cause, and this deadline could have easily
6   been met with the exercise of diligence. *See id.*
7   Simply put, Plaintiffs have not carried their burden to show diligence, and
8   therefore have failed to show good cause to revive and extend their expert deadline.

9   **B.    Plaintiffs' Neglect Was Not Excusable**

10  Even if the Court were to generously find good cause, Plaintiffs have not shown
11  that their neglect was excusable.
12  First, Defendants will be prejudiced if the expert report deadline is revised and all
13  the case deadlines – including that one – are extended. Defendants prepared their case
14  with the current deadlines in mind. In fact, Defendants have undertaken substantial steps
15  preparing to disclose their own experts on August 8th, in accordance with the case
16  management order. It is prejudicial if only one side is held to the Case Management
17  Order. Additionally, the Motion fails to indicate how many experts Plaintiffs hope to
18  retain if the "do-over" they request is granted. Plaintiffs' missed deadline has already
19  expanded this litigation and forced Defendants to expend time and money to hold
20  Plaintiffs to the case management order.[1]

21  Second, Plaintiffs' primary reason for their request is carelessness. As Plaintiffs
22  admit, they were "unaware" of the case management order for an entire six months since
23  they appeared in this case. (Doc. 30 at 2). But even a basic review of the docket would

---

[1] If the Court denies Plaintiffs' Motion, Plaintiffs could still present some expert testimony as they would still have the option to list and properly disclose rebuttal experts. *See* Case Management Order, Doc. 14 at p. 3. This option substantially removes any perceived prejudice to Plaintiffs.

reveal the existence of a case management order. And again, that document has controlled this litigation since October 2024. The parties have each sent discovery requests. Defendants have listed non-parties at fault and have diligently been working to obtain Plaintiffs' medical records and Camdyn's post-Kyrene educational records. All of those efforts are driven by the Case Management Order deadlines. Plaintiffs' admitted failure to even look at the case management order – something that is present in every cases – from the time they entered the case in December 2024 until now does not support granting their Motion.

Third, Counsel's busy trial calendar from May 15 to June 10, as represented in the Motion, could conceivably be good cause to allow a bit of extra time to finalize disclosing a previously retained expert. But, it is not good cause to allow Plaintiffs to start from scratch and retain who knows how many experts on who knows how many topics.

Fourth, Plaintiffs have not acted in good faith. Failing to perform basic diligence on the case does not evidence good faith. Even the equitable considerations in this matter do not support an extension under these circumstances.

In short, Plaintiffs have not shown good cause and their plain neglect of their deadlines is not excusable. *Branch Banking*, 871 F.3d at 765. The Court should deny the Motion.

At a minimum, the Court should deny the Motion with respect to any medical-related or damages experts Plaintiffs may now have in mind. Plaintiffs have continuously had exclusive control over that information and none of the records Defendants have had to retrieve from off-site storage would be necessary to Plaintiffs' experts in those areas.

III.   CONCLUSION

As the Ninth Circuit has held, a case management order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610.

Plaintiffs failed to take account of the case when they entered as counsel and did not even obtain a copy of the case management order. This careless lack of diligence precludes a finding of good cause. Further, Plaintiffs' neglect of their deadlines should not be excused.

Defendants respectfully request that Plaintiffs' Motion be denied.

**DATED** June 30, 2025.

                                                  GUST ROSENFELD P.L.C.

                                         By: */s/ Robert D. Haws - 012743*
                                              Robert D. Haws
                                              John A. Butzer
                                              *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing with electronic transmittal to the following:

Robert T. Mills
Sean A. Woods
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

 */s/ Pauletta J. Seitz*

# EXHIBIT 1

Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Camdyn Chavez, an individual; Paige Chavez, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>Kyrene School District No. 28, a political subdivision of the State of Arizona; Jeanette Vesely, individually and in her official capacity as Superintendent of Kyrene School District No. 28; James Martin, individually and in his official capacity as the former principal of Kyrene Altadeña Middle School and as an employee of Kyrene School District No. 28; Does I-X and ABC Corporations I-X,<br><br>Defendants. | Case No.: CV-24-02467-PHX-NJK<br><br>**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANTS**<br><br>(Assigned to the Hon. Magistrate Nancy J. Koppe) |

**TO: DEFENDANTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Camdyn Chavez and Paige Chavez hereby request that Defendants produce for inspection and copying the documents [and things] requested herein, in accordance with all applicable Rules and the Definitions and Instructions set forth below, within thirty (30) days of service.

## **DEFINITIONS**

1. "**Complaint**" means the operative Complaint in the above-captioned action.

Case 2:24-cv-02467-NJK     Document 32     Filed 06/30/25     Page 10 of 17

2. **"Defendants"** **"You"** or **"Your"** means Defendants in the above-captioned action, individually and/or collectively, and their subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any joint venture to which they may be a party, and/or each of their employees, agents, officers, directors, representatives, consultants, accountants and attorneys, including any person who served in any such capacity at any time during the relevant time period specified herein.

3. **"Plaintiffs"** means Plaintiffs Camdyn Chavez and Paige Chavez in the above-captioned action.

4. The term "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), including, without limitation, written, oral, or electronic transmissions.

5. The term "Document(s)" means all materials within the scope of Fed. R. Civ. P. 34, including, but not limited to, all writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, including electronically stored information, that are stored in any medium whatsoever from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, as well as any tangible things. Documents include, but are not limited to, electronic mail or e-mail, text messages, facsimiles, instant messages (IMs), calendars, diaries, appointment books, agendas, journals, drafts, voicemail messages, post cards, post-it notes, reports, logs, message slips, invoices, checks, paystubs, letters, memoranda, agreements, contracts, tax returns, bank statements, video recordings, audio recordings, computer programs, printouts, and all other written, graphic or electronic materials of any nature whatsoever. A draft or non-identical copy of a document is a separate document within the meaning of this term. A document includes all appendices, schedules, exhibits and other attachments. The term Documents includes all other documents encompassed by the Federal Rules of Civil Procedure and every "writing," "recording," and "photograph," as those terms are broadly defined in Fed. R. Evid. 1001, including all attachments or addenda annexed thereto, in your possession, custody, or control, dated, generated, transmitted, or received. The term "document" includes electronically stored information ("ESI") as specified in Fed. R. Civ. P. 26 & 34 and other authority.

6. The terms "electronically stored information" and "ESI" as used in these discovery requests are defined broadly to give the full scope of those terms as contemplated by Fed. R. Civ. P. 34 and shall include originals and all copies of information on operational systems including without limitation accounting, financial, legal, distribution, or manufacturing systems; E-mail; Instant Messages (IM); Web pages; text messages; cell phone data; Excel spreadsheets and underlying formulae; metadata; computer databases (i.e., Access); customer relationship management ("CRM") data; erased, fragmented or damaged data; Blackberry or other similar messaging services' data; and anything stored on computer or other electronic means located on or in, but not limited to cache memory; optical disks; magnetic tapes/back-up tapes; magnetic disks (hard drive, floppy disks, etc.); tablets; PDAs, iPhones; iPads; Blackberries and Palm Pilots; cell phones; IM tools; flash drives; and network storage.

7. The term "Writing" as used in this request for identification and production is a broadly inclusive term referring to any and all written or other graphic material, however produced or reproduced, of every kind and description and to everything upon which sounds, words, symbols or pictures are recorded or depicted by magnetic or electrical impulse, photography, or otherwise. The term "writing" includes, by way of example and not limitation, the following and anything similar to any of the following:

    a. Letters, telegrams, telexes, cables, TXWs, memoranda, E-mails, interoffice correspondence and other forms of correspondence and written communication;

b. Agreements, contracts, policies, handbooks, practice guidelines, reports, studies, records, books, journals, papers, statements, pamphlets, circulars, publications, stenographic notebooks, files and their contents, file folders, file covers, file jackets, and notes;

c. Summaries, abstracts, indexes, tabulations, graphs, charts, lists and inventories;

d. Calendars, desk calendars, appointment books, schedules, logs, telephone messages, diaries, time sheets, minutes of meetings, and transcripts;

e. Financial statements, checks, invoices and accounting records and books;

f. Pleadings, deposition transcripts, trial transcripts, interrogatories, answers to interrogatories, affidavits, declarations, papers filed or lodged with courts, and papers filed with or sent to administrative agencies; and,

g. Tape recordings, sound reproductions, objects, photographs, motion pictures, microfilm, computer data stored on magnetic tape, computer printouts, data processing cards or tapes, portable magnetic storage including without limitation USB drives and enclosed hard drives, and computer disks or diskettes.

8. "Relate," "related" or "relating" means, in addition to their usual and customary meanings, concerning, referring to, reflecting, regarding, pertaining to, addressing, discussing, alluding to, describing, evidencing, constituting or otherwise having any logical or factual connection with the subject matter addressed.

9. The words "and" and "or" shall be construed disjunctively or conjunctively to bring within the scope of each request for production all responses which otherwise might be construed to be outside the scope of a request for admission.

10. The word "any" shall be construed to include "all" and vice versa.

11. The word "each" shall be construed to include "every" and vice versa.

12. Any word in the singular form shall also be construed as plural and vice versa.

13. The masculine form shall also be construed to include the feminine and vice versa.

14. "Identify" with respect to a person means to give, to the extent known, the person's (a) full name; (b) present or last known address; and (c) current or last known place of employment.

15. "Identify" with respect to a document means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Rule 33 of the Federal Rules of Civil Procedure.

16. "Identify" with respect to communications means to give, to the extent known, (a) a description of the substance of the communication; (b) the form of the communication (e.g., telephone, facsimile, email, etc.); (c) the identity of all parties to and/or present at the time of the communication, as well as the full name, present or last known address, and the current or last known place of employment of each person; (d) the identity of the person whom you contend initiated the communication; and (e) the time, date, and place of the communication.

3

17. "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity, organization, or association.

18. "Statement" or "statements" as used herein refers to a written expression signed or otherwise adopted or approved by the person making it or a stenographic, mechanical, electronic, or other record, or a transcription thereof, which is a substantially verbatim recital of an oral expression by the person making it.

## INSTRUCTIONS

1. All objections to the production of documents requested herein shall be made in writing and delivered to the office of MILLS + WOODS LAW, PLLC 5055 North 12th Street, Suite 101, Phoenix, Arizona 85014, on or before the date set for production.

2. All documents are to be produced as they are kept in the usual course of business including any labels, file markings or similar identifying features, or shall be organized and labeled to correspond to the categories requested herein. If there are no documents in response to a particular request, or if you withhold any responsive documents/information or categories of documents/information based on any objections, Plaintiff shall state so in writing.

3. Electronically stored information (ESI) must be produced on CD-R or USB drive in its original native format including its accompanying metadata. For example:

   a. documents created using Microsoft Word must be produced as .DOC or .DOCX files;

   b. documents created using Microsoft Excel must be produced as .XLS or .XLSX files;

   c. documents created using Microsoft PowerPoint must be produced as .PPT or .PPTX files; [and]

   d. emails must be produced in a form that readily supports import into standard email client programs, or the form of production should adhere to the conventions set out in the internet email standard.

**OR**

4. Electronically stored information (ESI) must be produced in .PDF with corresponding load files containing the document's text and all available metadata.

5. ESI should be produced on appropriate electronic media of Plaintiff's choosing that does not impose an undue burden or expense upon Executive Process.

6. These requests call for the production of all responsive documents in your possession, custody or control, or in the possession, custody or control of your employees, predecessors, successors, parents, subsidiaries, divisions, affiliates, partners, joint ventures, brokers, accountants, financial advisors, representatives, and agents or other persons acting on your behalf, without regard to the physical location of such documents.

7. In responding to these requests, include documents obtained on your behalf by your counsel, employees, agents or any other persons acting on your behalf. If your response is that the documents are not within your possession or custody, describe in detail the unsuccessful efforts you made to locate each such document. If your response is that documents are not under your control, identify who has control and the location of the documents.

8. If any document was, but no longer is, in your possession, subject to your control or in existence, include a statement:

   a. identifying the document;

4

       b.    describing where the document is now;

       c.    identifying who has control of the document;

       d.    describing how the document became lost or destroyed or was transferred; and

       e.    identifying each of those persons responsible for or having knowledge of the loss, destruction or transfer of the document from your possession, custody or control.

9.    Each request contemplates production of all documents in their entirety. If only a portion of a document is responsive to one or more requests, the document shall be produced in its entirety.

10.    If any document is withheld in whole or in part for any reason including, without limitation, a claim of privilege or other protection from disclosure such as the work product doctrine or other business confidentiality or trade secret protection, set forth separately with respect to each withheld document:

       a.    the ground of privilege or protection claimed;

       b.    every basis for the privilege or protection claimed;

       c.    the type of document;

       d.    its general subject matter; and

       e.    the document's date.

11.    If Plaintiff objects to any document request on any ground other than privilege, Plaintiff must specify:

       a.    the part of the request that is objectionable and respond and allow inspection of materials responsive to the remainder of the request; and

       b.    whether any responsive materials are being withheld on the basis of an objection.

12.    To the extent Plaintiff asserts that a document contains information that should be protected from disclosure (based on the attorney-client privilege, work product doctrine or another protection) and non-privileged information, the non-privileged portions of the document must be produced. For each such document, indicate the portion of the document withheld by stamping the words "MATERIAL REDACTED" on the document in an appropriate location that does not obscure the remaining text.

13.    If there are no documents in response to any particular request, Plaintiff shall state so in writing.

14.    Unless otherwise stated herein, all documents requested cover the period between **January 1, 2015** through and including the present date.

15.    Examples of responsive items set out in any request should not be construed to limit the scope of the request.

16.    Requests for production should be read so as to encompass any and all items responsive to the request.

17.    In accordance with Fed. R. Civ. P. 34(b), as to each document produced, you are requested to designate the paragraph and subparagraph of this request to which each such document is responsive.

18.    This Request is a continuing one, and requires that you produce all responsive documents and tangible objects whenever you obtain or become aware of them,

5

even if they are not in your possession or available to you on the date you first produce documents pursuant to this Request.

**REQUESTS FOR PRODUCTION**

1. The complete student record or student file of Camdyn Chavez.

2. All Documents, Communications, ESI and Writings referencing or related to Camdyn Chavez.

3. All Documents, Communications, ESI and Writings referencing or related to student complaints of bullying, sexual abuse, discrimination, harassment or intimidation, including but not limited to any investigation and any resolution of such complaints, from 2015 to the present.

4. All Documents, Communications, ESI and Writings referencing or related to any investigation of reports of bullying, sexual abuse, discrimination, harassment or intimidation directed at Camdyn Chavez.

5. All Documents, Communications, ESI and Writings referencing or related to any discipline imposed on any student for conduct directed at Camdyn Chavez.

6. All Documents, Communications, ESI and Writings You provided to United States Department of Education, Office of Civil Rights or any other governmental entity with jurisdiction of Kyrene School District referencing or related to Camdyn Chavez.

7. All medical and mental health records in Your possession that reference or relate to Camden Chavez.

8. All Documents, Communications, ESI and Writings referencing or related to any policies, procedures, directives or instructions for responding to reports or complaints of student bullying, sexual abuse, discrimination, harassment or intimidation.

9. All Documents, Communications, ESI and Writings referencing or related to any investigation of You by any governmental entity in connection with alleged violations of the civil rights of any student since 2015.

10. All Documents, Communications, ESI and Writings referencing or related to any complaints against You for alleged violation(s) of civil rights since 2015.

11. All Documents, Communications, ESI and Writings referencing or related to any complaints against You for allegedly failing to respond appropriately to reported bullying, sexual abuse, discrimination, harassment or intimidation since 2015.

12. All Documents, Communications, ESI and Writings referencing or related to the following individuals whom You have identified as non-parties at fault:

    a. Marcello Lane;

    b. Brayden Hove;

    c. Marcus Stevens;

    d. Mason Spain;

    e. Gabe Carrizoza;

    f. Mason Pio;

    g. Garret Groff;

    h. Samuel K. Kalstrom;

    i. Matthew P. Braun;

    j. Jaxson G. Buscaglio;

    k. Jaden Logan;

    l. Brandon Larson;

    m. Ethan Bate;

    n. Tristan E. Guerinot;

    o. Paulo Padilla;

    p. Decon C. Miller;

    q. Alana Tudor Trotter;

    r. Carter Holt;

    s. Mason Montgomery;

    t. Michael Conte;

    u. Ty Hernlig;

    v. Carson Groff;

    w. Seth Calderon.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

13. All Documents, Communications, ESI and Writings referencing or related to Eddie Chavez.

14. All Documents, Communications, ESI and Writings referencing or related to Paige Chavez.

15. All Documents, Communications, ESI and Writings referencing or related to any Title IX complaints, investigations, or resolutions from any student since 2015.

**RESPECTFULLY SUBMITTED** this 13th day of May 2025.

**MILLS + WOODS LAW, PLLC**


By  */s/ Sean A. Woods*
    Robert T. Mills
    Sean A. Woods
    5055 North 12th Street, Suite 101
    Phoenix, AZ 85014
    *Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2025, I electronically transmitted the foregoing document via email to the following:

Robert D. Haws
rhaws@gustlaw.com
pseitz@gustlaw.com
John A. Butzer
jbutzer@gustlaw.com
**GUST ROSENFELD P.L.C.**
One E Washington St., Ste. 1600
Phoenix, AZ 85004-2553
(602) 257-7422
*Attorneys for Defendants*


    */s/ Ben Dangerfield*

8

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

9